

**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

TMM / ALL
Transmittal Number: 13425898
Date Processed: 02/03/2015

| | |
|---|---|
| **Primary Contact:** | Pamela Hoff<br>The Travelers Companies, Inc.<br>385 Washington Street, MC 515A<br>Saint Paul, MN 55102 |

| | |
|---|---|
| **Entity:** | Travelers Casualty and Surety Company of America<br>Entity ID Number 2319288 |
| **Entity Served:** | Travelers Casualty and Surety Company of America |
| **Title of Action:** | Parc Condominium Association vs. Travelers Casualty and Surety Company of America |
| **Document(s) Type:** | Citation/Petition |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Harris County District Court, Texas |
| **Case/Reference No:** | 2015-04628 |
| **Jurisdiction Served:** | Texas |
| **Date Served on CSC:** | 02/02/2015 |
| **Answer or Appearance Due:** | 10:00 am Monday next following the expiration of 20 days after service |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Dylan B. Russell<br>713-977-8686 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

**EXHIBIT**

**B**

SCH780 RECEIPT NUMBER _____ 0.00
exp 7/31/17 TRACKING NUMBER ___ 73098370 ____ ATY

**CAUSE NUMBER** ___ 201504628

| PLAINTIFF: PARC CONDOMINIUM ASSOCIATION | In The 281st |
| vs. | Judicial District Court of |
| DEFENDANT: TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA | Harris County, Texas |

**CITATION CORPORATE**

**THE STATE OF TEXAS**
**County of Harris**

TO: TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (CONNECTICUT
    CORPORATION) BY SERVING THROUGH ITS REGISTERED AGENT IN TEXAS CORPORATION
    SERVICE COMPANY
    OR WHEREVER ELSE IT MAY BE FOUND

    211 EAST 7TH STREET SUITE 620  AUSTIN TX 787013218

Attached is a copy of ___ PLAINTIFF'S ORIGINAL PETITION _____.

This instrument was filed on the ___ 28th ___ day of ___ January _____, 20 __15__, in the
above cited cause number and court. The instrument attached describes the claim against you.

    **YOU HAVE BEEN SUED**; you may employ an attorney. If you or your attorney do not file a written answer with the
District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of 20 days after you were
served this citation and petition, a default judgment may be taken against you.

**TO OFFICER SERVING:**

    This Citation was issued under my hand and seal of said Court, at Houston, Texas, this ___28th___ day of
_____ January _____, 20 __15__.

Issued at request of:
RUSSELL, DYLAN BENJAMEN
5051 WESTHEIMER SUITE 1200
HOUSTON, TX 77056
Tel: (713) 977-8686
Bar Number: 24041839

**CHRIS DANIEL, District Clerk**
Harris County, Texas
**201 Caroline, Houston, Texas 77002**
P.O. Box 4651, Houston, Texas 77210

**Generated by:** CUERO, NELSON   7MM//10017135

**OFFICER/AUTHORIZED PERSON RETURN**

I received this citation on the _____ day of _____, 20 ____, at _____ o'clock ____.M., endorsed

the date of delivery thereon, and executed it at _____, _____,
                                      (street address)                         (city)

in _____ County, Texas on the _____ day of _____, 20 ____, at _____ o'clock ____. M.,

by delivering to _____, by delivering to its
                            (the defendant corporation named in citation)

_____, in person, whose name is _____,
(registered agent, president, or vice-president)

a true copy of this citation, with a copy of the _____ Petition attached,
                                (description of petition, e.g., "Plaintiffs Original"

and with accompanying copies of _____.
                       (additional documents, if any, delivered with the petition)

I certify that the facts stated in this return are true by my signature below on the _____ day of _____, 20 ____.

FEE: $ _____           By: _____
                                     (signature of officer)
                          Printed Name: _____

_____  As Deputy for: _____
Affiant Other Than Officer                              (printed name & title of sheriff or constable)

On this day, _____, known to me to be the person whose signature
appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was
executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, 20 _____.

_____
                              Notary Public

N.INT.CITC.P

1/28/2015 10:47:06 AM
Chris Daniel - District Clerk Harris County
Envelope No. 3927943
By: Nelson Cuero
Filed: 1/28/2015 10:47:06 AM

# 2015-04628 / Court: 281

CAUSE NO. _____

| | | |
|---|---|---|
| PARC CONDOMINIUM ASSOCIATION | § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA | § | |
| Defendant. | § | \_\_\_\_\_ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW the Plaintiff, Parc Condominium Association, ("Plaintiff" or "Parc"), through

undersigned counsel, and files this Original Petition for damages and declaratory judgment against

Defendant Travelers Casualty and Surety Company of America ("Defendant" or "Travelers") and

alleges and states as follows:

### I. Discovery

1.      Pursuant to Rules 190.1 and 190.4 of the Texas Rules of Civil Procedure, Plaintiff

alleges that this case should be conducted under Level 3 of the Discovery Control Plan.

### II. Relief Sought - Rule 47(c)

2.      Plaintiff affirmatively pleads that it currently seeks monetary relief over $200,000

but not more than $1,000,000. Plaintiff affirmatively pleads that it also seeks declaratory relief and

any necessary ancillary relief, including, if necessary, mandatory and prohibitive injunctive relief.

### III. Parties

3.      Plaintiff Parc Condominium Association is a homeowner association for Parc IV and

Parc V Condominiums in Harris County, Houston, Texas.

4.    Defendant Travelers Casualty and Surety Company of America is a Connecticut corporation with its principal place of business at One Tower Square, Hartford CT 06183. Plaintiff requests that a citation be issued and service to be affected upon Defendant through service on its registered agent in Texas, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218 or wherever else it may be found.

### IV. Jurisdiction and Venue

5.    This Court has jurisdiction over this case because the amount in controversy is within the jurisdictional limits of this Court and because declaratory relief, pursuant to the Texas Uniform Declaratory Judgment Act (TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.*) (hereinafter "UDJA"), is sought herein that will terminate the controversy or remove an uncertainty.

6.    Venue in this case is proper in Harris County, Texas, pursuant to Section 15.002(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas.

### V. Facts

7.    On September 14, 2010, the plaintiffs (the Sprechers) in the underlying case filed a lawsuit against Parc and its management company, in Cause No. 2010-59445, styled *David Sprecher and Leslie K. Sprecher v. AMI Association Management, Inc. and Parc Condominium Association*, which is still pending in the 333rd Judicial District Court of Harris County, Texas.

8.    Sometime thereafter, Travelers agreed to provide a defense, but upon information and belief, subject to a reservation of rights. Travelers continued to provide a defense until the Sprechers filed their First Amended Petition on February 25, 2013. A true and correct copy of the Sprechers' First Amended Petition is attached hereto as **Exhibit A** and is incorporated herein by reference.

9.      On March 11, 2013, Travelers sent a letter to Parc notifying it that as a result of the

First Amended Petition "Travelers hereby advises that we must withdraw the defense previously

provided to Parc" and its management company. The sole reason for withdrawing defense coverage

was based on an exclusion (i.e., "Policy Section IV. Exclusion 1, as modified by the Amended

BI/PD Endorsement CIRI 70007") in the subject policy, which Travelers claimed stated that the

"Insurer shall not be liable to make payment for Loss in connection with any Claim made against

any of the Insureds for Claims," as follows:

> for or arising out of any damage, destruction, loss of use or deterioration of any
> tangible property including without limitation, construction defects, whether or not
> as a result of faulty or incorrect design or architectural plans, improper soil testing,
> inadequate or insufficient protection from soil and/or ground water movement, soil
> subsidence, mold, toxic mold, spores, mildew, fungus, wet or dry rot, or the
> supervision of actual construction, manufacturing or assembly of any tangible
> property.

In light of that paragraph, Travelers concluded that "[b]ecause the claim arises out of damage as a

result of Hurricane Ike, the aforementioned exclusion is applicable," and therefore, "there is no

coverage under the Policy for this matter."

10.      Notably, the Sprechers' Original Petition made a number of the same allegations as

set forth in the First Amended Petition. A true and correct copy of the Sprechers' Original Petition

is attached hereto as **Exhibit B** and is incorporated herein by reference. Travelers' March 11, 2013

letter, however, failed to explain (and in fact completely ignored) how the allegations in the First

Amended Petition somehow precluded coverage when the Original Petition did not. It should be

noted that the timing of Travelers' withdrawal of coverage suspiciously coincides with the point at

which settlement negotiations with the Sprechers had finally broken down beyond repair. Further,

the negotiations involved an attempt to use the Hurricane Ike insurance proceeds, not insurance

defense funds (i.e., the cost of defense and potential indemnification liability), to settle the Sprechers' underlying lawsuit.

11.      Without coverage, Parc and its management company proceeded to a jury trial in September of 2014.[1] The Sprechers' live pleading at the time of trial was their fifth, but titled Fourth Amended Petition. This petition was filed on September 3, 2014. A true and correct copy of the Sprechers' Fourth (Actual Fifth) Amended Petition is attached hereto as **Exhibit C** and is incorporated herein by reference.

12.      Consistent throughout the original, first, second, third, fourth, and fifth amended petition, however, were numerous factual allegations and claims that warrant insurance coverage. Page 7 of the Sprechers' First Amended Petition alleged that the Sprechers suffered damages resulting from a number of acts and/or omissions, including the following:

- "Defendants failed to timely make available or otherwise apply insurance proceeds needed for repairs and replacements to Plaintiffs' units."

- "Although the $98,000 is owed to Plaintiffs for repair and replacement of their units, Defendants refuse to provide the insurance proceeds to Plaintiffs unless Plaintiffs sign off on a full and final release to Defendants for all of Plaintiffs' claims against Defendants."

On page 8 of the Sprechers' September 3, 2014 pleading, the pleading at trial, it was similarly alleged, as follows:

---

[1]Although seeking $2,106,564.34 in their pleadings, the jury only found that the Sprechers incurred $48,000 in damages and $102,300 in attorney's fees for trial. On January 13, 2015, the court signed an order, not a final judgment, awarding the Sprechers $48,000 in damages but ordering a new trial on the Sprechers' attorney's fees "for determination of the proper segregated amount." Trial is currently scheduled on the attorney's fees part of the case in June of 2015. Notably, the only damages in the jury's verdict was for the increased cost of repair over time resulting from the delay in timely delivering the insurance proceeds to the Sprechers, which the jury and court found was wrongfully withheld by Travelers' prior insurance defense law firm, Roberts Markel Weinberg Butler Hailey, P.C.

- "Defendants failed to timely and properly pay and/or adjust the damages sustained to the Property."

Thus, from their First Amended Petition to the latest pleading, the Sprechers claimed damages were caused by the delay in timely tendering insurance proceeds, which is the precise issue submitted by the trial court to the jury, for which the jury found $48,000 in damages.

13.     The damages found by the jury and awarded by the trial court in its latest interlocutory order represent nothing more than the increased cost of repair to the Sprechers' units over the passage of time resulting from the delay in tendering the insurance proceeds. In other words, the damage was caused by delay. Such damages, however, are **not** "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including without limitation, construction defects, whether or not as a result of faulty or incorrect design or architectural plans, improper soil testing, inadequate or insufficient protection from soil and/or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, wet or dry rot, or the supervision of actual construction, manufacturing or assembly of any tangible property." To be sure, the trial could not fault the Parc or its management company for damages caused by Hurricane Ike, which was undisputedly an Act of God, as defined in the law. The trial court, however, concluded that the Parc and its management company could be liable for any increase cost of repair suffered by the Sprechers resulting from the failure to timely tender insurance proceeds from the Travlers insurance policy that *did* cover damage from Hurricane Ike.

## VI. Causes of Action and Requests for Relief

### A.  *Requests for Declaratory Judgment*

14.  Pursuant to the Texas Uniform Declaratory Judgment Act (TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.*) (hereinafter "UDJA"), a "person interested under a . . . written contract or other writings constituting a contract or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction . . . arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a).  In fact, a "contract may be construed either before or after there has been a breach." TEX. CIV. PRAC. & REM. CODE § 37.004(b).

15.  Furthermore, the "enumerations in Section[] 37.004 . . . do not limit or restrict the exercise of the general powers conferred in this section in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty." TEX. CIV. PRAC. & REM. CODE § 37.003(c).  A "court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE § 37.003(a).

16.  Additionally, the UDJA "is a remedial statute designed 'to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'" *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b)).  This Court can issue declaratory relief "in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995) (quoting from TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(c)).

17.     In light of the foregoing, Parc seeks a declaratory judgment under the UDJA declaring that Travelers has a duty under the applicable policy, notwithstanding the above-referenced exclusion, to pay for the Parc's defenses costs, including attorney's fees in connection with Sprechers' pending lawsuit in the 334th District Court of Harris County, Texas, as well as any future judgment awarded against Parc.

## B.     *Requests for Ancillary Relief*

18.     "Section 37.011 of the Uniform Declaratory Judgment Act . . . allows for further relief based on a declaratory judgment upon a showing that the relief is necessary and proper." *Lakeside Realty, Inc. v. Life Scape Homeowners Ass'n*, 202 S.W.3d 186, 189 (Tex. App.—Tyler 2005, no pet.). "'Further relief' is ancillary to the declaratory relief and may be sought in the same proceeding or in a later proceeding." *Id.* at 191. "A trial court has an affirmative duty to enforce its judgment." *In re Crow-Billingsley Air Park*, 98 S.W.3d 178, 179 (Tex. 2003). "And the Declaratory Judgments Act expressly empowers a trial court to make supplemental rulings to aid enforcement of a declaratory judgment." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 37.011).

19.     Based upon the facts set forth above and Texas law, the Parc also seeks an order from the Court compelling Travelers to reimburse Parc for all incurred attorney's fees and to pay all future attorney's fees and any judgment, consistent with the policy and Texas law.

## C.     *Violations of the Texas Insurance Code*

20.     Based of the above conduct, Defendant's violations of the Texas Insurance Code include, but are not limited to:

   (1)     knowingly misrepresenting to the Plaintiff pertinent facts or policy provisions relating to coverage at issue;

   (2)     failing to effect a prompt, fair, and equitable settlement of the claim in which liability has become reasonably clear;

(3)     denying the claim without first conducting a reasonable investigation of the claim;

(4)     failing within a reasonable time to pay the policy benefits; and

(5)     making a material misstatement of fact.

As a result of Defendant's violation of the Texas Insurance Code, Plaintiff has suffered damages.

**D.     Breach of the Duty of Good Faith and Fair Dealing**

21.     In addition or in the alternative, Plaintiff would show that the Defendant had a duty to deal fairly and in good faith with it in the handling of its insurance claim. Defendant breached this duty by both refusing to properly investigate the claim and wrongfully denying the claim. Defendant knew or should have known that there was no reasonable basis for denying Plaintiff's insurance claim. As a result of Defendant's breach of these legal duties, Plaintiff has suffered damages.

**E.     Violations of the Texas Deceptive Trade Practices Act**

22.     In addition or in the alternative, Plaintiff would show that Defendant's acts and omissions as discussed above were violations of the Texas Deceptive Trade Practices Act (DTPA).

23.     Tex. Bus. & Comm. Code §§ 17.42, 17.46, 17.50(a) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices. Defendant's above-described violations of the Texas Insurance Code and other unconscionable acts are violations of the DTPA.

**F.     Breach of Contract**

24.     In addition or in the alternative, Defendant breached the policy by refusing to pay the amounts due to Parc under the policy. As a result of Defendant's breach of contract, Plaintiff has suffered damages.

## VII. Damages

25.     Parc is entitled to the actual damages resulting from the above-described acts and omissions of the Defendant including but not limited to all amounts owed to Parc under the terms of the policy.

26.     In addition, Plaintiff is entitled to damages pursuant to Texas Insurance Code §542.060.

27.     Furthermore, Defendant's knowing and intentional violations of Texas Insurance Code §§ 541 and 542 and Tex. Bus. & Comm. Code §17.50, its unconscionable acts, as well as the breach of its common law duty of good faith and fair dealing entitles Parc to damages for statutory damages as permitted by the Texas Insurance Code and the Tex. Bus. & Com. Code.

## VIII. Attorney's Fees

28.     Plaintiff is entitled to recover reasonable and necessary attorney fees under Tex. Civ. Prac. & Rem. Code §§ 37.009 and 38.001(8), Tex. Bus. & Com. Code §17.50 (d), Tex. Ins. Code § 541.152(a)(1), and Tex. Ins. Code § 542.060.

## IX. Interest

29.     Plaintiff further brings suit for pre-judgment interest as allowed by law.

## X. Conditions Precedent

30.     All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, prays that Defendant, be cited to

appear, and pray that this Court award Plaintiff:

a.   All declaratory and ancillary relief as set forth above;

b.   All damages, special, exemplary, statutory, or otherwise, as set forth
     above;

c.   Reasonable and necessary attorney's fees through trial and any appeals;

d.   Pre-judgment interest at the legal rate through trial and post-judgment
     interest at the highest rate allowed by law;

e.   Costs of court; and

f.   Such other and further relief, at law or in equity, to which Plaintiff
     may show itself justly entitled.


                         Respectfully submitted,

                         **HOOVER SLOVACEK LLP**


                    By: /s/ Dylan B. Russell
                         Dylan B. Russell
                         State Bar No. 24041839
                         Matthew A. Kornhauser
                         State Bar No. 11684500
                         Galleria Tower II
                         Westheimer, Suite 1200
                         Houston, Texas  77056
                         Telephone: 713-977-8686
                         Facsimile:  713-977-5395
                         russell@hooverslovacek.com
                         kornhauser@hooverslovacek.com

                    **ATTORNEYS FOR PLAINTIFF**

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

NO. 2015-04628 / Court: 2845

13 P

CONFIRMED FILE DATE: 9/14/2010

| | | |
|---|---|---|
| DAVID SPRECHER and LESLIE K. SPRECHER | § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § | HARRIS COUNTY, TEXAS |
| v. | § | |
| AMI ASSOCIATION MANAGEMENT, INC. and PARC CONDOMINIUM ASSOCIATION | § | 11 JUDICIAL DISTRICT |
| DEFENDANTS | § | |

## PLAINTIFF'S ORIGINAL PETITION FOR INJUNCTION

TO THE HONORABLE COURT:

DAVID SPRECHER and LESLIE K. SPRECHER ("Plaintiffs") complain of AMI ASSOCIATION MANAGEMENT, INC. and PARC CONDOMINIUM ASSOCIATION (collectively "the Defendants"), and for cause of action shows:

### I. DISCOVERY LEVEL

Plaintiffs plead that discovery should be conducted in accordance with a discovery control plan under Rule 190.3 pursuant to the Texas Rules of Civil Procedure.

### II. PARTIES AND SERVICE

Plaintiffs are individuals residing in Texas and owners of Units 904, 906, and 908 of Parc V Condominiums located in Harris County, Houston, Texas.

AMI ASSOCIATION MANAGEMENT, INC. is a property management company managing Parc IV and Parc V Condominiums in Harris County, Houston, Texas who may be served through its registered agent for service of process, David Regenbaum located at 5295 Hollister Street, Houston, Texas 77040.

## EXHIBIT B

FILED
Loren Jackson
District Clerk

SEP 1 4 2010

Time: _____
By _____ Harris County
Deput...

PARC CONDOMINIUM ASSOCIATION is a homeowner association for Parc IV and Parc V Condominiums in Harris County, Houston Texas who may be served through its registered agent for service of process, Association Management, Inc. at 5295 Hollister Street, Houston, Texas 77040.

### III. RELATIONSHIP OF PARTIES

Plaintiffs are owners of Units 904, 906, and 908 of Parc V Condominiums located in Harris County, Houston, Texas. AMI ASSOCIATION MANAGEMENT, INC. ("AMI") is the property management company managing Parc IV and Parc V Condominiums ("Property") in Harris County, Houston, Texas. PARC CONDOMINIUM ASSOCIATION ("HOA") is the homeowner association for the Property and basically the same company as AMI.

On or about September 13, 2008, Hurricane Ike hit Houston, Texas. As a result, the Property including Units 904, 906, and 908 (the "Units") sustained considerable damage. AMI and the HOA (collectively "Defendants") were responsible for having and providing the appropriate insurance in place to cover the Hurricane Ike related claims, adjusting the Hurricane Ike related claims, and timely coordinating the necessary repairs. To cover the costs of these obligations, Plaintiffs and other homeowners were charged assessment and maintenance fees. From the time of Plaintiffs' purchase of the Units, Plaintiffs paid all assessment and maintenance fees charged. *See* Exhibit "1" Certificates of Liability Insurance for Parc Condominium Association and Association Management, Inc. attached hereto.

2

## IV.  DEFENDANT'S BREACH

However, despite full payment of assessment and maintenance fees charged over the years by Defendants, Defendants now threaten irreparable harm to Plaintiffs' property interest and rights in Parc IV and Parc V and the Units by failing to properly insure the Units, adjust the Hurricane Ike claims for the Units, and to timely repair the Units.  Defendants are now charging Plaintiffs two to three times over and above normal rates for maintenance and assessments fees.  Further, Defendants are now charging 133% more in maintenance and assessment fees than what was charged prior to Hurricane Ike.  See Exhibit "2," Parcs Condominium Association—Summary of Monthly Assessments, attached hereto. Additionally, Defendants demand for payment of and continue to charge Plaintiffs for maintenance, assessment, and repair fees for Hurricane Ike damages Plaintiffs previously paid for.  The same associated damages Defendants demand payment for and continue to charge for still remain unrepaired.

Upon information and belief, Defendants are lavishly repairing and upgrading favored units with Property insurance proceeds to the detriment of others such as Plaintiffs.  It is now two years since Hurricane Ike.  Defendants have failed and refused to repair Plaintiffs' Units to status quo.  Plaintiffs' Units remain in a state of disrepair, or dilapidated and essentially uninhabitable for Plaintiffs, a tenant, or potential tenant, or purchaser.

The repairs performed thus far pertaining to and affecting the aesthetics of the

3

Property such as exterior windows and doors have been repaired with mismatched materials. These mismatched repairs and replacements violate the bylaws for the Property.

> It is the general intention that replacement doors and windows should match the appearance of the existing units as closely as possible, while at the same time providing required resistance to wind loads; and greatly increased protection against water leakage.

*See* Exhibit "3," at File Recording Nos. 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 and 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, Parc Condominium Association by-laws and associated resolutions, attached hereto.

Attempts by Plaintiffs to communicate with Defendants concerning the lack of fair and reasonable coordination of repairs to the Units and Property and distribution of insurance proceeds have been met with unconscionable retaliation including service calls to law enforcement, arbitrary assessment of fines and penalties, and threats of physical harm. Upon information and belief, Defendants or others acting in concert with Defendants have vandalized Plaintiffs' property and property of Plaintiffs' tenants. Defendants harass, threaten and formulate false allegations regarding any person, homeowner or tenant, at their discretion without diplomacy.

Further, Defendants are using the continued disrepair of Plaintiffs' Units as an excuse to enter the Units without permission, leave Unit doors open for days without permission, and allowing "would-be" contractors or unknown persons access to the Units without providing any security. Defendants' conduct violates the by-laws for the property.

> Residents must either personally admit contractors to their units or authorize the Manager to give the contractor a key on the resident's behalf. The resident is responsible for the contractor both within the

4

resident's unit while contractor is anywhere on Parc Condominium Association property.

*See* Exhibit "3," at File Recording No. 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, Parc Condominium Association by-laws and associated resolutions, attached hereto. Also, *see* Exhibit "4," Painting Schedule dated March 16, 2010, attached here to.

Defendants' conduct is wrong because Defendants are fraudulently disbursing insurance proceeds, unfairly and arbitrarily deciding which units receive repairs. Additionally, Defendants are using the occurrence of Hurricane Ike to justify the charge of exorbitant and unreasonable maintenance and assessment fees in order to effectuate potential foreclosure or to force Plaintiffs to forfeit property rights—all for the sole benefit of Defendants and others acting in concert with Defendants.

Although Defendants demand payment for and continue to charge exorbitant assessment and maintenance fees, Defendants have been and are mismanaging and misappropriating homeowners' funds. As one among many examples, Defendants failed to pay contractors hired to perform work (although the work was never performed). *See* Exhibit "5," for Basic Builders, Inc. July 13, 2010, Notice of Lien Claim.

## V. PLAINTIFF'S INJURIES AND DAMAGES

Plaintiffs have and will continue to be damaged and injured by Defendants and the loss of and permanent injury to the value of the Units and Property. The Defendants' actions have caused the Plaintiffs damages in an amount within the jurisdictional limits of this Court, by causing potential foreclosure, loss of profits, loss of income, loss of original investment,

5

loss of the quiet enjoyment and use of the Units, and depriving Plaintiffs of the use of funds that are now being expended on exorbitant maintenance and assessment fees.

## VI. PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

The Plaintiffs require injunctive relief to prevent the Defendants from (i) charging Plaintiffs for increased maintenance and assessment fees until a full accounting by an objective third party has been performed, (ii) further distribution of insurance proceeds and/or repair work to the Units or Property until a fully accounting by an objective third party has been performed, (iii) lavishly repairing and upgrading favored units with Property insurance proceeds to the detriment of others such as Plaintiffs, (iv) threatening to physically harm Plaintiffs or Plaintiffs' Property, (v) engaging in acts of retaliation towards Plaintiffs, their tenants, agents or representatives, (vi) attempting foreclosure or any acts constituting or resembling attempts to foreclose on Plaintiffs' Units related to assessment fees, maintenance fees or repair fees, and (vii) from assessing or charging fines or penalties relating to maintenance, assessment and repair fees.

Plaintiffs seek further injunctive relief in light of the irreparable harm that will continue without the following relief:

1. Terminate current Board members of the HOA and appoint new Board Members with majority voting rights to be with a panel of actual Property owners.

2. Terminate current Property management company (AMI) and appoint a new Property management company, who shall have no affiliation, none whatsoever, with AMI, or

6

any current Board members of the HOA.

3. Terminate all contractors, and their subcontractors or agents who were hired by AMI or the HOA to perform Hurricane Ike repairs.

4. The newly appointed Property management company and newly appointed Board Members of the HOA shall, through newly hired contractors, repair Plaintiffs' Units to status quo.

5. All excess assessments, maintenance and repair fees charged and paid for by Plaintiffs related to or allegedly related to Hurricane Ike shall be remitted to Plaintiffs.

6. Defendants shall provide evidence of proper insurance for the Units and all related adjustments related to Hurricane Ike or Property damage claims made by Defendants and immediately furnish to Plaintiffs without further costs to Plaintiffs.

7. Defendants shall provide an accounting of all assessments, fees, and repairs for the Units and Property related to Hurricane Ike or damages.

VII.    PROBABLE RIGHT OF RECOVERY AND LIKELIHOOD OF SUCCESS

The Plaintiffs have alleged a cause of action against Defendants, and as indicated in this Petition and the Verification In Support of Plaintiffs' Original Petition for Injunction and incorporated herein by reference, the Plaintiffs have shown a probable right of recovery and likelihood of success on the merits, the Plaintiffs will suffer imminent, irreparable harm without Court intervention, and there is no adequate remedy at law.

As a direct and proximate cause of the Defendants' wrongful actions as alleged in this

Petition, the Plaintiffs have suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of injunctive relief. The Plaintiffs are willing to post a bond to facilitate the injunctive relief requested.

The only adequate, effective, and complete relief to the Plaintiffs is to immediately restrain the Defendants from further engaging in certain prescribed activities, as set forth below. Pursuant to Tex. R. Civ. P. § 680 et seq. and Tex. Civ. Prac. & Rem. Code § 65.001 et seq., and in order to preserve the status quo during the pendency of this action, the Plaintiffs seek an injunction, and upon hearing, a permanent injunction ordering and immediately restraining the Defendants, including Defendants' agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the "Restrained Parties") as follows:

1.     Enjoin the Restrained Parties from charging or demanding payment by Plaintiffs for increased maintenance and assessment fees until a full accounting by an objective third party has been performed as to the reason for the increases and charges allegedly related to Hurricane Ike charges for Plaintiffs' Units, and provide a full accounting to Plaintiffs and Plaintiffs' counsel with opportunity to review, comment, and/or contest by Plaintiffs and Plaintiffs' counsel.

2.     Enjoining the Restrained Parties from any further distribution of insurance proceeds and/or repair work to the Units or Property until a full accounting by an objective third party has been performed as to specifics concerning the reason for distribution and

8

repair and provided to Plaintiffs and Plaintiffs' counsel with opportunity to review, comment, and/or contest by Plaintiffs and Plaintiffs' counsel.

3.      Enjoin the Restrained Parties from continuing to lavishly repair and upgrade favored units, Board Member units or units owned by any persons or agents associated or employed by AMI with Property insurance proceeds to the detriment of others such as Plaintiffs.

4.      Enjoin the Restrained Parties or any agents or persons acting in concert with the Restrained Parties from threatening to physically harm or causing harm to Plaintiffs, Plaintiffs' Property, their agents, representatives, tenants, or counsel.

5.      Enjoin the Restrained Parties or any agents or persons acting in concert with the Restrained Parties from engaging in acts of retaliation towards Plaintiffs, Plaintiffs' Property, their agents, representatives, tenants, or counsel.

6.      Enjoin the Restrained Parties or any agents or persons acting in concert with the Restrained Parties from any attempts at foreclosure or any acts constituting or resembling attempts to foreclosure on Plaintiffs' Units related to assessment fees, maintenance fees or repair fees, and/or Hurricane Ike assessments, maintenance or repair fees.

7.      Enjoin the Restrained Parties or any agents or persons acting in concert with the Restrained Parties from assessing or charging fines or penalties relating to maintenance, assessment or repair fees in connection with or allegedly in connection with Hurricane Ike to Plaintiffs until a full accounting by an objective third party has been performed as to specifics

9

concerning the reason for distribution, maintenance, repair, fine or penalty and provided to Plaintiffs and Plaintiffs' counsel with opportunity to review, comment and/or contest by Plaintiffs and Plaintiffs' counsel.

8. Enjoin the Restrained Parties from continuing to irreparably harm Plaintiffs by continuing with the wrongful acts as alleged in this Petition.

9. Terminate the current Board members of the HOA and appoint new Board Members with the majority voting rights to be with a panel of actual Property owners.

10. Terminate the current Property management company (AMI) and appoint a new Property management company, who shall have no affiliation, none whatsoever, with AMI, or current Board Members of the HOA.

11. Terminate all contractors, and their subcontractors or agents who were hired by AMI or the HOA to perform or allegedly perform Hurricane Ike repairs, or hired by AMI or the HOA for any ongoing maintenance, repairs or improvements to the Property.

12. Require that the newly appointed Property management company and newly appointed Board Members of the HOA, through newly hired contractors, repair Plaintiffs' Units to status quo.

13. Order that the Restrained Parties, their agents, representatives or counsel, to remit all excess assessments, maintenance or repair fees charged and paid for by Plaintiffs related to or allegedly related to Hurricane Ike to Plaintiffs.

14. Order that the Restrained Parties provide evidence of current, proper insurance

10

for the Units and all related adjustments for same in connection with Hurricane Ike, and provide certificates of insurance or proof thereof to Plaintiffs, without further costs to Plaintiffs.

15.    Order the Restrained Parties provide a full accounting by an objective third party of all assessments, maintenance or repair fees for the Units and Property related to or allegedly related to Hurricane Ike damages, specifics concerning the reason for assessment and maintenance fees, repair or distribution, to Plaintiffs and Plaintiffs' counsel with opportunity to review, comment and/or contest by Plaintiffs and Plaintiffs' counsel.

16.    Order that the Restrained Parties are prohibited from charging Plaintiffs for maintenance and assessment fees for repairs that Plaintiffs paid for the past that were allegedly performed, but were never performed.

17.    Order that the Restrained Parties are prohibited from the destruction or deletion of any documents, evidence or record, electronic or otherwise that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiffs, including but not limited to all audio, video or electronic recordings, hard drives, backups, archives, and other possible sources of stored metadata or information.

WHEREFORE, the Plaintiffs respectfully pray for the following relief:

1.    Upon hearing, a preliminary injunction for the relief requested above;

2.    Upon final trial, judgment against the Defendants, Restrained Parties, their agents or representatives, for full permanent injunctive relief, and for the full

11

amount of Plaintiffs' actual damages including, but not limited to, assessments, maintenance, repair fees, fines, monies paid for work which was purportedly already performed on the Property, loss of rental income, mental anguish related to threats of physical harm, harassment, or vandalism to Plaintiffs, their tenants, agents or Property, and to have Plaintiffs' Property repaired to status quo, as found by the trier of fact as a consequence of the Defendants, the Restrained Parties, or conduct or others acting in concert with Defendants, the Restrained parties, or on behalf of Defendants or the Restrained Parties;

3.   Prejudgment interest as provided by law;

4.   Postjudgment interest as provided by law;

5.   The Plaintiffs' reasonable and necessary attorneys' fees in prosecuting its claims through trial and, if necessary, through appeal.

6.   All costs of suit; and

7.   Such other and further relief, at law or equity, to which Plaintiffs may be justly entitled.

12

Respectfully submitted,

**TERRI M. GARCIA, P.C.**

Terri M. Garcia
Texas State Bar No. 24029528
8422 Kirkbrook Drive
Houston, Texas 77089
Telephone: (281) 741-3420
Facsimile:  (281) 606-0710

Unofficial Copy Office of Loren Jackson District

13

9/3/2014 11:09:20 AM
Chris Daniel - District Clerk Harris County
Envelope No. 2358576
By: BERNADETTE LYNCH

# 2015-04628 / Court: 281

NO. 201059445

| | | |
|---|---|---|
| DAVID SPRECHER and LESLIE K. SPRECHER | § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | HARRIS COUNTY, TEXAS |
| v. | § § | |
| AMI ASSOCIATION MANAGEMENT, INC. and PARC CONDOMINIUM ASSOCIATION | § § § § | 333RD JUDICIAL DISTRICT |
| DEFENDANTS | § § | |

## PLAINTIFFS' FOURTH AMENDED PETITION

TO THE HONORABLE COURT:

DAVID SPRECHER and LESLIE K. SPRECHER ("Plaintiffs") complain of AMI ASSOCIATION MANAGEMENT, INC. and PARC CONDOMINIUM ASSOCIATION (collectively "the Defendants"), and for cause of action shows:

### I.   DISCOVERY LEVEL

Plaintiffs plead that discovery should be conducted in accordance with a discovery control plan under Rule 190.3 pursuant to the Texas Rules of Civil Procedure.

### II.   PARTIES AND SERVICE

Plaintiffs are individuals residing in Texas and owners of Units 904, 906, and 908 of Parc V Condominiums located in Harris County, Houston, Texas.

AMI ASSOCIATION MANAGEMENT, INC. is a property management company managing Parc IV and Parc V Condominiums in Harris County, Houston, Texas who has already been served and appeared.

PARC CONDOMINIUM ASSOCIATION is a homeowner association for Parc IV and Parc V Condominiums in Harris County, Houston Texas who has already been served and appeared.

# EXHIBIT C

III. RELATIONSHIP OF PARTIES

Plaintiffs are owners of Units 904, 906, and 908 of Parc V Condominiums located in Harris County, Houston, Texas. AMI ASSOCIATION MANAGEMENT, INC. ("AMI") is the property management company managing Parc IV and Parc V Condominiums ("Property") in Harris County, Houston, Texas. PARC CONDOMINIUM ASSOCIATION ("HOA") is the homeowner association for the Property.

On or about September 13, 2008, Hurricane Ike hit Houston, Texas. As a result, the Property including Units 904, 906, and 908 (the "Units") sustained considerable damage. AMI and the HOA (collectively "Defendants") were responsible for having and providing the appropriate insurance in place to cover the Hurricane Ike related claims, adjusting the Hurricane Ike related claims, timely coordinating the necessary repairs, and distributing repair funds to homeowners and/or contractors. To cover the costs of the insurance related obligations, Plaintiffs and other homeowners were charged assessment and maintenance fees and insurance premiums. From the time of Plaintiffs' purchase of the Units, Plaintiffs paid all assessment and maintenance fees charged.

IV. PERTINENT FACTS

*Insurance Policy and Insurance Repair Trust Funds*

AMI negotiated a master insurance policy for the properties it manages in the Houston area including Parc IV and V. In regards to same, AMI collected total premiums owed under the master policy. AMI assessed a total premium due for each property. It is unclear how AMI arrived at the amount of premium for each property. AMI charged some of its managed properties such as Parc IV and V more in premium than other properties. At Parc IV and V, AMI charged what it dubbed a pro rata share of premiums owed by each homeowner commensurate with the owner's percentage of

2

ownership in any given property.  AMI never provided Plaintiffs with the master policy or any breakdown of the premiums charged under the master policy.  Without complete transparency it is impossible to ascertain whether AMI charged Parc IV and V and thus Plaintiffs the correct amount of premium.  Upon information and belief, AMI overcharges the actual premium owed and pockets the overages.

Hurricane Ike hit on September 13, 2008 and afterwards Plaintiffs repeatedly asked Defendants to offer Plaintiffs an explanation as to why insurance proceeds were not being allocated to repair Plaintiffs' units.  Defendants did not communicate the amount, if any, of insurance proceeds that would be forthcoming to pay for the entire losses sustained by Plaintiffs as a result of Hurricane Ike.    In regards to same, Plaintiffs provided an estimate of repairs prepared by DB General Contractors to Defendants related to damages sustained resulting from Hurricane Ike.  DB's estimate for repairs and replacements for Plaintiffs' units was $96,828.63.

In the later part of 2012, Plaintiffs were making a critical decision whether or not Travelers or other applicable carriers bore some responsibility regarding the lack of insurance funds adjusted to repair Plaintiffs' units.  Due to statute of limitations, Plaintiffs needed to sue the applicable insurance carriers for breach of contract and possible fraud no later than September 13, 2012.  However, during discussions with Hilary Burrow, Travelers and related insurance carriers' attorney, Plaintiffs learned that $97,000 had already been paid by or on behalf of Travelers to Defendants for repairs and replacements to Plaintiffs' units.  Plaintiffs were informed that the $97,000 had been paid in connection with receiving the $96,828.63 estimate by DB General Contractors.

Defendants did not produce General Ledgers until January 2, 2014.  It was not until a review of same that Plaintiffs had documentation that Defendants had received the $97,000 on or about

3

August 24, 2011, as reflected in the Parc Condominium General Ledgers. On August 25, 2011, a check was cut to David Sprecher for $97,000, but David Sprecher never received this check. In her deposition of January 8, 2014, Lacey Buxton testified that the $97,000 check to David Sprecher was voided and when asked why it was voided, she testified that it was because David Sprecher never received the check. The General Ledgers evidence that on January 31, 2012, the check cut to David Sprecher for $97,000 was credited back to Defendants' bank account.

In the months of June and July of 2011, Defendants attempted to obtain a full and final release of Plaintiffs' claims against Defendants in this lawsuit for the payment of $65,000. What Plaintiffs did not know at the time as discussed above, was that Travelers, and/or other applicable insurance carrier, had approved $97,000 for repairs to Plaintiffs' units. The $65,000 offered to Plaintiffs by Defendants for settlement of this lawsuit was from Plaintiffs' insurance funds of $97,000 approved by the carrier for Plaintiffs' Hurricane Ike repairs. Defendants misappropriated and converted insurance proceeds for Plaintiffs' units by using Plaintiffs' insurance money to negotiate a full and final release of Plaintiffs' entire lawsuit against Defendants.

Plaintiffs demanded that Defendants remit the insurance funds to Plaintiffs, but Defendants refused to remit such funds unless Plaintiffs fully and finally released Defendants from a lawsuit.

Not only did Defendants convert Plaintiffs' insurance proceeds for their personal benefit, a full and final release by Plaintiffs, but also planned to profit and gain a windfall by not only using Plaintiffs' $97,000, but secretly pocketing $32,000 of the $97,000. Defendants only offered $65,000 to settle when Defendants had $97,000 of Plaintiffs' money. The $97,000 was insurance proceeds to be given to Plaintiffs for repairs to their units. The $97,000 was not to be used for anything else much less by Defendants as their own personal funds to negotiate a settlement of a lawsuit. Using

4

insurance repair funds for reasons other than to effectuate repairs at the Property constitutes insurance fraud. Defendants could have negotiated a settlement of Plaintiffs' claims against Defendants using Defendants' money *not* Plaintiffs' money. Defendants committed fraud when they 1) did not tell Plaintiffs about their $97,000, 2) did not give Plaintiffs their $97,000, 3) converted Plaintiffs' $97,000 for Defendants' sole use, 4) and attempting to secretly pocket $32,000 of the $97,000.

Out of the blue, on August 28, 2013, Defendants couriered a check to Plaintiffs' counsel dated August 16, 2013 made payable to David Sprecher for $97,254.45, $97,000.00 of which represented the total amount of insurance proceeds obtained by the Defendants on Plaintiffs' behalf and $254.45 represented interest on the $97,000.

It was not until production by Defendants on January 2, 2014, that Plaintiffs learned that Stephenson Consulting Group, LLC estimated the cost of repairs to some of the units including Plaintiffs' three units, 904, 906 and 908 ("Stephenson Report). The Stephenson Report is dated December 13, 2008 and reflects costs of repairs to the Plaintiffs' units with General Contractor fees and overhead and profit to be $19,671.26 for 904, $12,671.25 for 906, and $19,039.09 for 908. Defendants failed to provide this information to Plaintiffs. David Regenbaum testified in his January 13, 2014 deposition that the Stephenson Report reflected a breakdown of some insurance proceeds paid per unit. Lacey Buxton testified in her January 8, 2014 deposition consistent with David Regenbaum that the Stephenson Report reflected a breakdown of insurance repair funds paid per unit. Defendants never informed Plaintiffs that $51,381.60 was estimated and paid for repairs to Plaintiffs' units back in 2008. Defendants received $51,381.60 back in December of 2008 in insurance funds for Plaintiffs and deliberately withheld the funds and this information from Plaintiffs

5

just like the $97,000 of Plaintiffs' insurance money that Defendants deliberately kept unbeknownst to
Plaintiffs.

### *Lack of Coordination of Repairs and Distribution of Insurance Funds*

Upon information and belief, Defendants lavishly repaired and upgraded favored units with
Property insurance proceeds to the detriment of others such as Plaintiffs. It is now more than four
years since Hurricane Ike. Defendants have failed and refused to repair Plaintiffs' Units to status
quo. Plaintiffs' Units remain in a state of disrepair, or dilapidated and essentially uninhabitable for
Plaintiffs, a tenant, or potential tenant, or purchaser.

The repairs performed thus far pertaining to and affecting the aesthetics of the Property such
as exterior windows and doors have been repaired with mismatched materials. These mismatched
repairs and replacements violate the bylaws for the Property.

> It is the general intention that replacement doors and windows should match
> the appearance of the existing units as closely as possible, while at the same
> time providing required resistance to wind loads, and greatly increased
> protection against water leakage.

*See* File Recording Nos. 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 and 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, Parc Condominium Association by-laws
and associated resolutions.

Attempts by Plaintiffs to communicate with Defendants concerning the lack of fair and
reasonable coordination of repairs to the Units and Property and distribution of insurance proceeds
have been met with unconscionable retaliation including service calls to law enforcement, arbitrary
assessment of fines and penalties, and the vandalizing of Plaintiffs' property and/or property of
Plaintiffs' tenants.

Further, Defendants are using the continued disrepair of Plaintiffs' Units as an excuse to enter
the Units without permission, leave Unit doors open for days without permission, and allowing

6

"would-be" contractors or unknown persons access to the Units without providing any security. Defendants' conduct violates the by-laws for the property.

> Residents must either personally admit contractors to their units or authorize the Manager to give the contractor a key on the resident's behalf. The resident is responsible for the contractor both within the resident's unit while contractor is anywhere on Parc Condominium Association property.

*See* File Recording No. 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, Parc Condominium Association by-laws and associated resolutions. Also, *see* Painting Schedule dated March 16, 2010.

Defendants' conduct is wrong because Defendants have fraudulently disbursed insurance proceeds, unfairly and arbitrarily decided which units receive repairs. Additionally, Defendants are using the occurrence of Hurricane Ike to justify the charge of exorbitant and unreasonable maintenance and assessment fees.

Although Defendants demand payment for and continue to charge exorbitant assessment and maintenance fees, Defendants have been and are mismanaging and misappropriating homeowners' funds. As one among many examples, Defendants failed to pay contractors hired to perform work (although the work was never performed). *See* Basic Builders, Inc.'s July 13, 2010, Notice of Lien Claim.

However, despite full payment of assessment and maintenance fees charged over the years by Defendants, Defendants failed to properly insure the Units, adjust the Hurricane Ike claims for the Units, to timely repair the Units and disburse Plaintiffs' insurance proceeds. During the aftermath of Hurricane Ike, Defendants charged Plaintiffs two to three times over and above normal rates for maintenance and assessments fees. At times, Defendants charged 133% more in maintenance and assessment fees than what was charged prior to Hurricane Ike. *See* Parcs Condominium Association—Summary of Monthly Assessments. Additionally, Defendants continue to charge

7

Plaintiffs for maintenance, assessment, and repair fees for Hurricane Ike damages previously paid by Plaintiffs. The same associated damages Defendants demand payment for and continue to charge for still remain unrepaired.

## V.  PLAINTIFFS' INJURIES AND DAMAGES

Plaintiffs have and will continue to be damaged and injured by Defendants and the loss of and permanent injury to the value of the Units and Property. The Defendants' actions have caused the Plaintiffs damages in an amount within the jurisdictional limits of this Court, by causing loss of rental income, loss of original investment, loss of the quiet enjoyment and use of the Units, and depriving Plaintiffs of the use of funds that are now being expended on exorbitant maintenance and assessment fees. Defendants, unbeknownst to Plaintiffs, paid Plaintiffs' insurance repair funds. Defendants converted Plaintiffs' insurance money for their own use and deprived Plaintiffs' the use of their insurance money.

Defendants failure and/or refusal to provide an accounting and/or to keep and accounting of insurance proceeds related to Hurricane Ike for and to Plaintiffs of how the insurance proceeds related to Hurricane Ike with respect to the Units and Property were distributed and/or paid out has adversely affected Plaintiffs and caused Plaintiffs injury.

Defendants failed to timely and properly pay and/or adjust the damages sustained to the Property. To date, Plaintiffs have not been paid in full for damages to their respective units. Defendants failed to perform their duties to adequately compensate Plaintiffs for their windstorm losses. Defendants' conduct constitutes a breach of  the contractual obligations owed to Plaintiffs by Defendants.

Defendants misrepresented to Plaintiffs that the damages incurred after the storm were being

properly adjusted under respective and applicable insurance policies.  However, Defendants were not fairly and properly adjusting Plaintiffs' losses or making funds available for repairs.

Defendants failed to timely or properly inform Plaintiffs of acceptance or denial of their insurance claims and failed to meet the obligations owed to Plaintiffs after Hurricane Ike.

Defendants failed to timely or properly inform Plaintiffs of acceptance or denial of their insurance claims.

Defendants failed to meet the obligations owed to Plaintiffs after Hurricane Ike.

· Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

As a result of Defendants' wrongful acts and omissions, Plaintiffs were forced to retain the professional services of an attorney who is representing them with respect to this cause of action.

## CAUSES OF ACTION

### *COMMON LAW FRAUD*

Defendants are liable to Plaintiffs for common law fraud.  Each and every one of the representations, as described above, concerned material facts for the reason Plaintiffs would not have acted and which Defendants knew were false or made recklessly without any knowledge of their truth as a positive assertion.

a) Defendants made material representations to Plaintiffs;
b) The material representations were false when the material representations were made;
d) Defendants
    (i) knew that the material representations were false, or
    (ii) made the material representations recklessly without any knowledge of its truth and as a positive assertion;
    (iii) made the material representations with the intent that they should be acted upon by Plaintiffs;
e) Plaintiffs acted in reliance upon the representations and suffered injury or damages as a result.

9

### FRAUD BY NONDISCLOSURE

Defendants failed to disclose facts to Plaintiffs that the Defendants had a duty to disclose. Those facts were material and Defendants knew the Plaintiffs were ignorant of the facts and the Plaintiffs did not have an equal opportunity to discover the facts. Defendants were deliberately silent when they had a duty to speak; by failing to disclose the facts, the Defendants intended to induce the Plaintiffs to take some action or refrain from acting; Plaintiffs relied on the Defendants' nondisclosure; and Plaintiffs were injured as a result of acting without that knowledge.

### BREACH OF FIDUCIARY DUTY

Defendants' actions breached the fiduciary duties allowed to Plaintiffs as unit owners. Defendants abused their power and control over Plaintiffs' insurance policies and insurance money, which resulted in harm to Plaintiffs.

### BREACH OF CONTRACT

Defendants' conduct constitutes breach of the management agreements in place at Parc IV and V. In the alternative, Plaintiffs are third party beneficiaries of the contracts in place at Parc IV and V.

### CONVERSION

Defendants conduct constitutes conversion. Plaintiffs owned, possessed, or had the right of immediate possession of the insurance repair funds and Defendants wrongfully exercised dominion or control over the property to the exclusion of and inconsistent with the Plaintiffs' rights. Plaintiffs demanded return of the insurance funds and Defendants failed to return the funds.

### PROMISSORY ESTOPPEL

Defendants made promises to Plaintiffs about the procurement of insurance to cover

10

windstorm damage for the Property and to their individual units and adjustment of claims related to same. Defendants could foresee that the Plaintiffs would rely on the promise and Plaintiffs did substantially rely on the promise to their detriment. Injustice can be avoided only by the legal enforcement of the promise against Defendants as the promisors.

### NEGLIGENT MISREPRESENTATION

Defendants provided information in the course of business, or in a transaction in which they had a pecuniary interest; the information supplied was false; and Defendants did not exercise reasonable care or competence in obtaining or communicating the information. Plaintiffs justifiably relied on the information; and Plaintiffs suffered damages proximately caused by their reliance on the false information.

### NEGLIGENCE

Defendants owed a legal duty to the Plaintiffs and Defendants breached their duty. The breach was a proximate cause of the Plaintiffs' personal injuries and property damage.

### GROSS NEGLIGENCE

Defendants intentionally failed to perform duties owed to Plaintiffs in reckless conscious disregard of the consequences. Defendants' gross negligence was a proximate cause of the Plaintiffs' personal injuries and property damage.

### PUNITIVE DAMAGES

Plaintiffs seek punitive damages in connection with Defendants' gross negligence.

### UNJUST ENRICHMENT

Plaintiffs paid Defendants for services related to association management, fiscal management, and physical management for their units and for insurance coverage and claims.

11

Defendants accepted payments in the form of assessments, special assessments and deductible/premium payments. Defendants also received insurance proceeds for Plaintiffs without distributing same to Plaintiffs. It would be inequitable or unconscionable for the Defendants to enjoy the benefits of Plaintiffs' payments and insurance monies without reimbursing Plaintiffs.

### MONEY HAD AND RECEIVED

Defendants have obtained money that in equity and good conscience belongs to the Plaintiffs.

### KNOWELEDGE

Each of the acts, described above, together and singularly, was done "knowingly" and were a producing cause of Plaintiffs' damages described herein.

### DAMAGES

Plaintiffs will show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

The damages caused by Hurricane Ike rendered the residences of Plaintiffs substantially damaged. These damages have not been properly addressed or repaired since the storm, causing further damage to Plaintiffs' respective properties and causing undue hardship and burden on Plaintiffs. These damages are a direct result of Defendants' mishandling Plaintiffs' insurance proceeds.

For breach of contract, Plaintiffs are entitled to regain the benefit of their bargains, which is the amount of their claims and resultant losses plus reasonable and necessary attorneys' fees.

For knowing conduct of the acts complained of, Plaintiffs ask for three times their actual damages.

For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for

12

knowing fraudulent and malicious representations, along with attorneys' fees, interest and court costs.

Exemplary damages will be justified if the jury determines that Defendants' conduct was outrageous and caused Plaintiffs financial harm.

Plaintiffs have also suffered to the subject property diminution in value, loss of marketability, stigma, and harm resulting in damages to the Sprechers due to acts, omissions, and mismanagement by Defendants after Hurricane Ike.

For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

Plaintiffs seek and pray for an accounting of the insurance proceeds to be provided to Plaintiffs.

Plaintiffs seek and pray for $780,181.78 in damages with the following categories to be awarded them with respect to each cause of action:

1.    $174,682.59 in maintenance fees, taxes and special maintenance fees;

2.    $59,732 loss in value;

3.    $152,507 loss in projected increase;

4.    $47,878.59 difference between late remitted $97,254.45 and estimated repair costs;

4.    $51,381.60 initial insurance proceeds;

5.    $216,000 loss in rental income; and

13

6.      $78,000 in reasonable attorneys' fees and costs.

Plaintiff further seeks an award of punitive damages in addition to the $780,181.78 in damages in the amount of $2,106.564.34.00.

WHEREFORE, the Plaintiffs respectfully pray for the following relief:

1.      Upon final trial, judgment against the Defendants for the full amount of Plaintiffs' actual damages including, but not limited to, assessments, maintenance, replacement and repair costs, fines, monies paid for work which was purportedly already performed on the Property, loss of rental income, mental anguish related to threats of physical harm, harassment, or vandalism to Plaintiffs, their tenants, agents or Property, and to have Plaintiffs' Property repaired to status quo, as found by the trier of fact as a consequence of the Defendants or others acting in concert with Defendants;

2.      Prejudgment interest as provided by law;

3.      Post judgment interest as provided by law;

4.      The Plaintiffs' reasonable and necessary attorneys' fees in prosecuting its claims through trial and, if necessary, through appeal;

5.      All costs of suit; and

6.      Such other and further relief, at law or equity, to which Plaintiffs may be justly entitled.

14

Respectfully submitted,

**TERRI M. GARCIA, P.C.**

*/s/ Terri M. Garcia*
Terri M. Garcia
Texas State Bar No. 24029528
8422 Kirkbrook Drive
Houston, Texas 77089
Telephone: (281) 741-3420
Facsimile: (888) 415-8310
tgarcia@terrigarcialaw.com
Attorney for Plaintiffs

15

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing pleading was served on all known counsel of record on September 3, 2014.

/s/ Terri M. Garcia

Unofficial Copy Office of Chris Daniel District Clerk

16

2015-04628 / Court: 281
NO. 201059445

| | | |
|---|---|---|
| DAVID SPRECHER and LESLIE K. SPRECHER | § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | HARRIS COUNTY, TEXAS |
| v. | § § | |
| AMI ASSOCIATION MANAGEMENT, INC. and PARC CONDOMINIUM ASSOCIATION | § § § § | 333RD JUDICIAL DISTRICT |
| DEFENDANTS | § § | |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE COURT:

DAVID SPRECHER and LESLIE K. SPRECHER ("Plaintiffs") complain of AMI ASSOCIATION MANAGEMENT, INC. and PARC CONDOMINIUM ASSOCIATION (collectively "the Defendants"), and for cause of action shows:

### I. DISCOVERY LEVEL

Plaintiffs plead that discovery should be conducted in accordance with a discovery control plan under Rule 190.3 pursuant to the Texas Rules of Civil Procedure.

### II. PARTIES AND SERVICE

Plaintiffs are individuals residing in Texas and owners of Units 904, 906, and 908 of Parc V Condominiums located in Harris County, Houston, Texas.

AMI ASSOCIATION MANAGEMENT, INC. is a property management company managing Parc IV and Parc V Condominiums in Harris County, Houston, Texas who has already been served and appeared.

PARC CONDOMINIUM ASSOCIATION is a homeowner association for Parc IV

# EXHIBIT A

and Parc V Condominiums in Harris County, Houston Texas who has already been served and appeared.

### III. RELATIONSHIP OF PARTIES

Plaintiffs are owners of Units 904, 906, and 908 of Parc V Condominiums located in Harris County, Houston, Texas. AMI ASSOCIATION MANAGEMENT, INC. ("AMI") is the property management company managing Parc IV and Parc V Condominiums ("Property") in Harris County, Houston, Texas. PARC CONDOMINIUM ASSOCIATION ("HOA") is the homeowner association for the Property and basically the same company as AMI.

On or about September 13, 2008, Hurricane Ike hit Houston, Texas. As a result, the Property including Units 904, 906, and 908 (the "Units") sustained considerable damage. AMI and the HOA (collectively "Defendants") were responsible for having and providing the appropriate insurance in place to cover the Hurricane Ike related claims, adjusting the Hurricane Ike related claims, and timely coordinating the necessary repairs. To cover the costs of these obligations, Plaintiffs and other homeowners were charged assessment and maintenance fees. From the time of Plaintiffs' purchase of the Units, Plaintiffs paid all assessment and maintenance fees charged.

### IV. DEFENDANTS' BREACH

However, despite full payment of assessment and maintenance fees charged over the years by Defendants, Defendants failed to properly insure the Units, adjust the Hurricane Ike

2

claims for the Units, and to timely repair the Units. During the aftermath of Hurricane Ike, Defendants charged Plaintiffs two to three times over and above normal rates for maintenance and assessments fees.       At times, Defendants charged 133% more in maintenance and assessment fees than what was charged prior to Hurricane Ike. See Parcs Condominium Association—Summary of Monthly Assessments. Additionally, Defendants continue to charge Plaintiffs for maintenance, assessment, and repair fees for Hurricane Ike damages previously paid by Plaintiffs. The same associated damages Defendants demand payment for and continue to charge for still remain unrepaired.

Upon information and belief, Defendants lavishly repaired and upgraded favored units with Property insurance proceeds to the detriment of others such as Plaintiffs. It is now more than four years since Hurricane Ike. Defendants have failed and refused to repair Plaintiffs' Units to status quo. Plaintiffs' Units remain in a state of disrepair, or dilapidated and essentially uninhabitable for Plaintiffs, a tenant, or potential tenant, or purchaser.

The repairs performed thus far pertaining to and affecting the aesthetics of the Property such as exterior windows and doors have been repaired with mismatched materials. These mismatched repairs and replacements violate the bylaws for the Property.

> It is the general intention that replacement doors and windows should match the appearance of the existing units as closely as possible, while at the same time providing required resistance to wind loads, and greatly increased protection against water leakage.

See File Recording Nos. 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 and 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, Parc Condominium Association by-laws and associated resolutions.

3

Attempts by Plaintiffs to communicate with Defendants concerning the lack of fair and reasonable coordination of repairs to the Units and Property and distribution of insurance proceeds have been met with unconscionable retaliation including service calls to law enforcement, arbitrary assessment of fines and penalties, and threats of physical harm. Upon information and belief, Defendants or others acting in concert with Defendants have vandalized Plaintiffs' property and property of Plaintiffs' tenants. Defendants harass, threaten and formulate false allegations regarding any person, homeowner or tenant, at their discretion without diplomacy.

Further, Defendants are using the continued disrepair of Plaintiffs' Units as an excuse to enter the Units without permission, leave Unit doors open for days without permission, and allowing "would-be" contractors or unknown persons access to the Units without providing any security. Defendants' conduct violates the by-laws for the property.

> Residents must either personally admit contractors to their units or authorize the Manager to give the contractor a key on the resident's behalf. The resident is responsible for the contractor both within the resident's unit while contractor is anywhere on Parc Condominium Association property.

*See* File Recording No. 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, Parc Condominium Association by-laws and associated resolutions. Also, *see* Painting Schedule dated March 16, 2010.

Defendants' conduct is wrong because Defendants have fraudulently disbursed insurance proceeds, unfairly and arbitrarily decided which units receive repairs. Additionally, Defendants are using the occurrence of Hurricane Ike to justify the charge of

4

exorbitant and unreasonable maintenance and assessment fees.

Although Defendants demand payment for and continue to charge exorbitant assessment and maintenance fees, Defendants have been and are mismanaging and misappropriating homeowners' funds. As one among many examples, Defendants failed to pay contractors hired to perform work (although the work was never performed). *See* Basic Builders, Inc.'s July 13, 2010, Notice of Lien Claim.

## V. PLAINTIFFS' INJURIES AND DAMAGES

Plaintiffs have and will continue to be damaged and injured by Defendants and the loss of and permanent injury to the value of the Units and Property. The Defendants' actions have caused the Plaintiffs damages in an amount within the jurisdictional limits of this Court, by causing loss of rental income, loss of original investment, loss of the quiet enjoyment and use of the Units, and depriving Plaintiffs of the use of funds that are now being expended on exorbitant maintenance and assessment fees.

Defendants failed to timely and properly pay and/or adjust the damages sustained to the Property. To date, Plaintiffs have not been paid in full for damages to their respective units.

Defendants failed to perform their contractual duties to adequately compensate Plaintiffs for their losses. Defendants' conduct constitutes a breach of the contractual obligations owed to Plaintiffs by Defendants.

Defendants misrepresented to Plaintiffs that the damages incurred after the storm were being properly adjusted under respective and applicable insurance policies. However,

5

Defendants were not fairly and properly adjusting Plaintiffs' losses or making funds available for repairs.

Defendants, although repeatedly asked, failed to offer Plaintiffs adequate compensation without any explanation of why insurance proceeds were not being allocated to repair Plaintiffs' units. Defendants did not communicate the amount if any of insurance proceeds that would be forthcoming to pay for the entire losses sustained by Plaintiffs as a result of Hurricane Ike. More than three years after Hurricane Ike, Defendants attempted to obtain a full and final release of Plaintiffs' claims against Defendants for the payment of $68,000. What Plaintiffs did not know at the time, was that the applicable carrier had approved and cut a check for $98,000 for repairs to Plaintiffs' units and the $68,000 offered to Plaintiffs was from the $98,000 paid by the carrier. Defendants, in an attempt to misappropriate insurance proceeds ear marked for Plaintiffs' units, offered $68,000 for a full and final release. Defendants attempted to use Plaintiffs' ear-marked insurance proceeds for their personal benefit, a full and final release of Plaintiffs' claims in this cause against defendants. Not only did Defendants try to use Plaintiffs' insurance proceeds, Defendants planned to keep $30,000 of it for their own benefit unbeknownst to Plaintiffs. Plaintiffs learned later through the insurance carrier's counsel that $98,000 had been paid for Plaintiffs' units and the $98,000 was to be used for repairs and replacements not settlement funds for Defendants.

Defendants failed to timely or properly inform Plaintiffs of acceptance or denial of

6

their insurance claims.

Defendants failed to meet the obligations owed to Plaintiffs after Hurricane Ike.

Defendants failed to timely make available or otherwise apply insurance proceeds needed for repairs and replacements to Plaintiffs' units.  Even when Defendants had a check from the carrier for $98,000, Defendants only offered $68,000 of the proceeds and only did so to effectuate Defendants' interest in obtaining a full and final release from Plaintiffs.

Although the $98,000 is owed to Plaintiffs for repair and replacement of their units, Defendants refuse to provide the insurance proceeds to Plaintiffs unless Plaintiffs sign off on a full and final release to Defendants for all of Plaintiffs' claims against Defendants.

Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

As a result of Defendants' wrongful acts and omissions, Plaintiffs were forced to retain the professional services of an attorney who is representing them with respect to this cause of action.

## CAUSES OF ACTION

### *COMMON LAW FRAUD*

Defendants are liable to Plaintiffs for common law fraud.  Each and every one of the representations, as described above, concerned material facts for the reason Plaintiffs would not have acted and which Defendants knew were false or made recklessly without any

7

knowledge of their truth as a positive assertion.

### BREACH OF FIDUCIARY DUTY

Defendants' actions breached the fiduciary duties it owed to Plaintiffs as unit owners. Defendants abused their power, which resulted in harm to Plaintiffs.

Defendants used their board positions and/or management positions to derive profit or otherwise promote personal interest at the expense of the association of its constituent shareholders and unit owners such as Plaintiffs. Defendants used their board positions and/or management positions as a forum for prosecuting personal vendettas against particular shareholders or unit owners and Defendants manifested favoritism among shareholders and/or unit owners to the detriment of Plaintiffs.

### BREACH OF CONTRACT

Defendants' conduct constitutes breach of the agreements between Plaintiffs as homeowners at the Parc and Defendants.

### KNOWELEDGE

Each of the acts, described above, together and singularly, was done "knowingly" and were a producing cause of Plaintiffs' damages described herein.

### DAMAGES

Plaintiffs will show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

The damages caused by Hurricane Ike rendered the residences of Plaintiffs

8

substantially damaged. These damages have not been properly addressed or repaired since the storm, causing further damage to Plaintiffs' respective properties and causing undue hardship and burden on Plaintiffs. These damages are a direct result of Defendants' mishandling Plaintiffs' insurance proceeds.

For breach of contract, Plaintiffs are entitled to regain the benefit of their bargains, which is the amount of their claims and resultant losses plus reasonable and necessary attorneys' fees.

For knowing conduct of the acts complained of, Plaintiffs ask for three times their actual damages.

For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for knowing fraudulent and malicious representations, along with attorneys' fees, interest and court costs.

Exemplary damages will be justified if the jury determines that Defendants' conduct was outrageous and caused Plaintiffs financial harm.

For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

WHEREFORE, the Plaintiffs respectfully pray for the following relief:

9

1.      Upon final trial, judgment against the Defendants for the full amount of Plaintiffs' actual damages including, but not limited to, assessments, maintenance, replacement and repair costs, fines, monies paid for work which was purportedly already performed on the Property, loss of rental income, mental anguish related to threats of physical harm, harassment, or vandalism to Plaintiffs, their tenants, agents or Property, and to have Plaintiffs' Property repaired to status quo, as found by the trier of fact as a consequence of the Defendants or others acting in concert with Defendants;

2.      Prejudgment interest as provided by law;

3.      Postjudgment interest as provided by law;

4.      The Plaintiffs' reasonable and necessary attorneys' fees in prosecuting its claims through trial and, if necessary, through appeal;

5.      All costs of suit; and

6.      Such other and further relief, at law or equity, to which Plaintiffs may be justly entitled.

                              Respectfully submitted,

                              **TERRI M. GARCIA, P.C.**

                              */s/ Terri M. Garcia*
                              Terri M. Garcia
                              Texas State Bar No. 24029528
                              8422 Kirkbrook Drive
                              Houston, Texas 77089
                              Telephone:  (281) 741-3420
                              Facsimile:  (281) 606-0710

10

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing pleading was served on all known counsel of record on February 25, 2013.

*/s/ Terri M. Garcia*

11



U.S. POSTAGE
PAID
SUGARLAND,TX
77478
JAN 28, 15
AMOUNT
**$8.66**

1000    78701

00112305-05

Liolet vl
Po Box 326
Stafford TX 77477

CERTIFIED MAIL

7014 2120 0003 5774 6457

Corporation Service Company
R/A Travelers Casualty + Surety
211 E 7th St #620
Austin TX 78714



RETURN RECEIPT
REQUESTED